UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERRY LEE KINSLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 3:07-CV-5-JVB |
| | ) |
| THE INDIANA DEPARTMENT OF CORRECTIONS, | ) |
| LARRY WARG, LINDA DEPAUW, TOMMY HORNE, | ) |
| WENDELL THURBER, and MIKE KOWALSKY, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Terry Lee Kinslow sued the Indiana Department of Correction and five prison guards because he was severely beaten by other inmates at Westville Correctional Facility. Plaintiff maintains that the Defendants are liable to him under 42 U.S.C. § 1983 and Indiana tort laws. In particular, Plaintiff claims that the correctional officers failed to protect him from an inmate-on-inmate attack, in violation of the Eight Amendment to the United States Constitution (which has been made applicable to the states through the Fourteenth Amendment), and that the Indiana Department of Correction was negligent in housing him with violent offenders. Defendants moved for summary judgment, claiming the officers were not deliberately indifferent to a substantial risk of serious harm to Plaintiff and that they are protected by qualified immunity. Defendants also argue that the Department of Correction committed no negligence and that, in any case, Plaintiff assumed the risk of the injuries. Finally, Defendants insist that Plaintiff's claims against Officer Mike Kowalsky are barred by the statute of limitations. For the reasons explained below, the Court grants in part and denies in part the Defendants' motion for summary judgment.

A. **Procedural Background**

Plaintiff was attacked by other inmates on January 22, 2005. On December 4, 2006, he filed a Complaint in the LaPorte Superior Court against the Indiana Department of Corrections and Officers Larry Warg, Linda Depauw, Tommy Horne, Wendell Thurber, and Mike Kowalsky. With the Complaint Plaintiff tendered service copies of the Complaint, state court summonses for the Defendants, and the filing fee. All Defendants were properly served except Kowalsky whose summons was sent to the Westville Correctional Facility, although he was no longer working there.

On January 3, 2007, the Defendants removed the case to this Court. Seven months later, on July 17, Plaintiff served summons upon Kowalsky. On August 30, 2007, Kowalsky filed an Answer to the Complaint. As one of his defenses, he claimed that Plaintiff's suit against him is time-barred. (DE 10, Kowalsky Answer at 15.) From this point on, the lawsuit took on its normal course with the Defendants eventually moving for summary judgment.

B. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp.*

*v. Onwuteaka,* 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.,* 137 F.3d 962, 965 (7th Cir. 1998). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

A genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. It is well-settled that summary judgment should be granted "only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts." *Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.,* 626 F.2d 537, 539 (7th Cir.1980) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

**C.    Facts**

Plaintiff Terry Lee Kinslow was an inmate at the Westville Correctional Facility. In early 2005 he suffered a mental breakdown and lost his job in the prison kitchen. Being without a job, he was transferred to an administrative idle dorm (P-2). As the name implies, an idle dorm houses offenders who do not have prison jobs, often because they have bad conduct records. In the P-2 dorm, the well-behaved prisoners and the offenders with the bad conduct records have separate sleeping quarters and they are kept in the opposite wings of the dorm: the bad in the north wing; the good in the south wing. The prison rules prohibit the two groups from mixing. However, while Plaintiff was in the P-2 dorm, both groups mingled regularly as there was no

3

easy way for the guards to tell to which wing a particular inmate belonged and there was no physical separation between the two wings. The P-2 dorm housed 117 inmates, with one guard watching them. The guard was located in a pod in the middle of the dorm. From the pod, the guard could see and hear most of the dorm. In addition, the guard was supposed to walk through the dorm every half hour.

A group of the north wing inmates regularly made hooch. They would drink it on the weekends and become rowdy and violent. Johnny Newsome and Byron Harris were among the makers of this moonshine. Around January 1, 2005, Newsome and Harris placed some of the hootch on an outside window ledge near the south wing of the dorm, where it was discovered by the guards. Newsome and Harris told Plaintiff to accept the responsibility for the hooch or they would beat him up. Fearing for his safety, Plaintiff told Officer Wendell Thurber that the hooch was his. However, he later recanted his admission privately to Officer Thurber, stating that he had been coerced into the confession. Officer Thurber told Plaintiff not to worry about it and to return to the dorm. Plaintiff did not receive any punishment, nor did anyone else.

A few weeks later, Newsome and Harris got drunk and were acting rowdy in the day-room as others, including Plaintiff, watched television. Plaintiff saw Newsome and Harris hit inmates on their backs about six times. At this time, Officer Kowalsky was in the guard station.

Seeing that Newsome and Harris were boisterous, Plaintiff decided to go to the sleeping quarters to visit his friends. As he exited the day-room, Newsome and Harris attacked him from behind. The attack itself was out of the view of the security cameras and could not be seen from the pod, but it drew the attention of the inmates in the day-room, who were pointing toward the direction of the fight and began gathering around. Thirty seconds later, the crowd dispersed, and

4

several of the inmates took Plaintiff away. Officer Michael Brubacher, who later reviewed the incident on the videotape, testified that the behavior of the inmates in the day-room indicated that there was "an event happening that was of interest to the offenders," which could have been a fight. (Brubacher Dep. at 17, 1–12.) Officer Kowalsky did not intervene and maintains that he did not see any of this action. Some time later, as he was doing his rounds, Officer Kowalsky discovered Plaintiff on the bathroom floor bleeding from his head. He immediately called for assistance and Plaintiff was taken to the hospital.

As a result of the attack, Plaintiff's jaw was broken in two places and he lost several teeth. He now has dizzy spells and daily headaches.

**D.     Analysis**

The parties agree that Defendants Warg, Depauw, and Horne are not responsible for Plaintiff's injuries and that they should be dismissed from this case. They also agree that the Eighth Amendment claim is against Officers Thurber and Kowalsky only and that the state law negligence claim is against the Indiana Department of Correction alone.

**(1)** *Statute of Limitations*

Defendants contend that all claims against Officer Kowalsky are time-barred because Plaintiff did not serve him until July 2007, more than two years after he suffered the injuries. The Court disagrees.

The date the lawsuit was properly commenced, not the date of service, determines if the statute of limitations has lapsed. *See Geiger and Peters, Inc. v. American Fletcher Nat. Bank &*

5

*Trust Co.*, 428 N.E.2d 1279, 1282 (Ind. Ct. App. 1981) ("Literal compliance with T.R. 3 by filing a complaint commences the cause of action and is sufficient to toll the statute of limitations. . . . the Indiana Rules of Civil Procedure do not establish a time period within which service of process must be completed in order to toll the statute of limitations."). Here, Plaintiff timely filed this case against the Defendants, including Officer Kowalsky, in Indiana state court on December 4, 2006. He complied with all requirements of the Indiana Trial Rule 3: he paid the filing fee and gave the clerk copies of the complaint and summons for each defendant. Accordingly, his suit was properly commenced on December 4, 2006.

**(1)** *Section 1983*

Section 1983 is not a source of substantive rights. Instead, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)).

The parties do not dispute that Officers Thurber and Kowalsky acted under color of state law. Hence only one question remains for Plaintiff's § 1983 claim: did Officers Thurber and Kowalsky deprive Plaintiff of a right secured by the Constitution and laws. Plaintiff claims that Officers Thurber and Kowalsky violated the Eighth Amendment by failing to protect him from an attack by Newsome and Harris. He argues that Officer Thurber acted with deliberate

6

indifference when he sent him back to the P-2 dorm despite being told that Plaintiff had been threatened with violence if he did not accept responsibility for the hooch. Likewise, Plaintiff argues that Officer Kowalsky showed deliberate indifference by failing to patrol the dorm every half an hour as required by the prison's policies, by failing to prevent the attack against Plaintiff, and by failing to intervene once he was attacked.

"In order to survive summary judgment on these claims against the jail officers . . . [Plaintiff] must demonstrate a genuine issue of material fact with respect to the officer's 'deliberate indifference to [Plaintiff's] safety." *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). This requires "a showing that the inmate was 'incarcerated under conditions posing a "substantial risk of serious harm," and a showing that individual prison officials had subjective knowledge of the risk of harm, which they personally disregarded." *Id*. The inquiry for the second prong "is not whether individual officers *should have* known about risks to [Plaintiff's] safety, but rather whether they *did* know of such risks." *Id*. "[T]he defendants' knowledge of the risk can be inferred." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, if an officer "did witness an inmate assault, but failed to intervene, his actions would seemingly 'constitute a paradigm case of deliberate indifference." *Grieveson*, 538 F.3d 763 at 778.

Plaintiff has presented no facts that would create a genuine issue as to Officer Thurber's liability. When Plaintiff recanted his responsibility for the hooch and told him that he made the confession only because of threats against him, Officer Thurber had no reason to believe that Plaintiff was at substantial risk of serious harm. Plaintiff denied his responsibility in private and no other inmate was punished for the hooch, so as to suggest that Plaintiff had not in fact

7

accepted the blame. Moreover, Plaintiff returned to his unit and continued to live there without incident for several weeks, and, when he was attacked, there was no indication that he was attacked in retaliation for failing to be a scapegoat. In fact, when questioned by the Defendants' attorney about the incident, Plaintiff denied that there was any correlation between the hooch and his beating:

> Q. So these offenders from the north side told you to take the blame for the hooch?
> A. Right.
> Q. And you did that?
> A. Right.
> Q. And then later on, when you and Thurber were alone, you said I didn't really do it, they did it?
> A. Right.
> Q. And Thurber didn't then screen them?
> A. No, he didn't act like he cared.
> Q. Do you think that they somehow found out that you had told Thurber that it wasn't you?
> A. Possibly, but I don't know.
> Q. Well, anything is possible?
> A. Right.
> Q. Do you think that they somehow found that out; do you have any some reason to think that they found that out?
> A. No.
> Q. So as far as you know, they thought you did take the fall?
> A. Right. Right.

(*Id*. 77, 16–78, 13.)

Only after his attorney's leading questions did he begin to speculate that the beating was related to the hooch:

> Q. You didn't have any discipline imposed on you?
> A. No, sir.
> Q. And if you had taken the fall and accepted the blame—
> A. Right.
> Q. —wouldn't it have been common that you would have received some kind of discipline for it?

8

| | |
|---|---|
| A. | Yes, sir, but I think through the drug screen, it proved that I wasn't consuming it into my body. |
| Q. | But I'm asking about what other inmates— |
| A. | Right. |
| Q. | —might have seen or had any reason to believe that maybe you didn't actually take the fall for it is because you didn't receive any discipline |
| A. | Right. |
| Q. | Wouldn't that have been obvious to somebody? |
| A. | Right. |
| Q. | Newsome, Harris or Evans that you hadn't taken the blame for them? |
| A. | Right—well, that's true, *because I never thought of it*. |
| Q. | Because you didn't have any discipline--- |
| A. | You're right. |
| Q. | —imposed. |
| A. | *You're right. Maybe that's how it was. It's possible.* |

(Kinslow Dep. 78, 19–79, 20 (emphasis added.))

Accordingly, summary judgment in favor of Officer Thurber is warranted.

However, Plaintiff has created a genuine issue of material facts regarding Officer Kowalsky's liability. Plaintiff presented evidence that Officer Kowalsky was on duty when he was attacked and presented enough information from which it could be inferred, if the facts are taken in the light most favorable to the Plaintiff—as they must be at this juncture—that Officer Kowalsky was aware of the fight, but did nothing about it. The possibility of such deliberate indifference, *see James*, 956 F.2d 696, 700, is enough for Plaintiff to overcome summary judgment. Moreover, if Plaintiff's account is true, Officer Kowalski may not invoke the defense of qualified immunity as it would have been obvious to any reasonable officer in his position that it was his duty to stop a fight. Therefore, it will be for the jury to decide what really happened and if Officer Kowalsky had opportunity to protect Plaintiff.

**(1)** *Negligence*

Plaintiff argues that Defendant Indiana Department of Correction's negligence was also the cause of his injuries because it breached its duty to keep him safe. The Department responds to this attack by noting that prisons are dangerous places and that Plaintiff assumed the risk of violence by recanting his confession, (Defs.' Memo. S.J. at 21).

Prison officials owe prisoners a duty of reasonable care. *Iglesias v. Wells,* 441 N.E.2d 1017, 1019 (Ind. Ct. App. 1982). According to Indiana law, whether the IDOC breached this duty is a matter for the jury unless there is only one conclusion that any reasonable jury could possibly reach. *Cox v. Paul*, 828 N.E.2d 907, 911-12 (Ind. 2005).

Here, a reasonable jury could find that the Department breached its duty of care. For example, the attack was carried out by the north wing inmates in the south wing of the P-2 dorm, despite the prison rule that inmates are not allowed to mix, *see, e.g., Lachenman v. Stice*, 838 N.E.2d 451, 463 (Ind. Ct. App. 2005) (violation of a rule or regulation can be evidence of negligence), and just before the attack, Newsome and Harris were seen in the day-room drunk hitting other inmates, without any intervention from the guards. Moreover, Plaintiff presented evidence that such behavior was a common every-weekend occurrence. In light of such allegations, the Court must deny the Defendants' motion for summary judgment on the issue of negligence.

**D.     Conclusion**

For these reasons, the Court grants in part and denies in part the Defendants' Motion for Summary Judgment (DE 24). Accordingly, the Court dismisses Officers Larry Warg, Linda Depauw, Tommy Horne, and Wendell Thurber, but affirms the current trial setting against

Officer Mike Kowalsky and the Indiana Department of Correction.

SO ORDERED on September 11, 2009.

/s/Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE